We'll hear argument first this morning in case number 20-219, Cummings v. Premier Rehab Keller. Mr. Rosensky. Mr. Chief Justice, and may it please the Court, the Fifth Circuit categorically prohibited emotional distress damages in all instances under spending clause statutes prohibiting discrimination. Based on Franklin and Barnes, that decision is wrong. Franklin held that removal, and Barnes reaffirmed that holding. Emotional distress damages are the most common and often the only form of compensatory damage remedy for victims of intentional discrimination. Barnes held that remedies are available under the statutes here. They are traditionally available under contract law. Emotional distress damages are indeed recoverable in breach of contract cases for the type of conduct at issue here. As Section 353 of the Second Restatement and all the leading treatises cited in Barnes explain, when a contract breach is of such a kind that serious emotional disturbance was a particularly likely result, then recovery for emotional disturbance is allowed. Premier has not, and cannot, dispute that serious emotional disturbance is a particularly likely result of intentional discrimination. Premier asked this Court to disregard the restatement rule, but there is no basis to do so. The particularly likely result concept has been long a fixture of the law, and virtually all courts agree that in contract cases involving places of public accommodations, improper denial of access traditionally gives rise to emotional distress damages. For all these reasons, the Court should reverse the Fifth Article under Spending Clause legislation at issue here. With that, I welcome any questions from the Court, and will move to the balance of my argument. If we don't agree with you that the emotional distress damages were traditionally available, do you have another argument? Yes, that in Franklin and what was reaffirmed in Barnes, the Court has already found that compensatory damages are available, and emotional distress is often the only and most common form of compensatory damage that one who is a victim of discrimination experiences. In cases, if you look at Barnes or Franklin, those appear to be closer to either indifference or in Barnes or intentional tort in Franklin. Would you say this is an intentional tort case? This is not an intentional tort case. What the Fifth Circuit did was categorically say that in all instances under the Spending Clause legislation at issue that emotional distress damages are categorically unavailable. That decision by the Fifth Circuit is wrong. I understand the analogy to contract law, but what's necessary in the spending law context? You can't just go and say the Court of Appeal in Montana had decided this case and gave emotional distress damages. Therefore, in any case under the Spending Clause, the recipient is subjected to those damages. What we have here is, as I understand it, a fairly narrow category of compensatory damages in a very narrow category of cases. Let's say it's 100 percent of those cases. How many of each of those cases have to be present before you can say that a recipient is bound by that under Section 504 and the other categories? Anyone can go on Lexis or Westlaw and pick a case and find a case that says what they want. However, you look to the restatements and you look to the treatises to find what is the state of the law and what exactly is available. For these types of contracts, you will see that the restatements and all the leading treatises say that when there is an agreement to treat people fairly with equality, especially in discrimination cases where you do not improperly exclude people from places of public accommodation, that emotional distress damages are available for these types of situations. And so you would look to the restatements and the treatises to see what the state of the law is. The treatises all identify a very narrow category of cases. The general rule is that emotional distress is not part of compensatory damages for breaches of contract. They're a very narrow category of cases, as the Chief Justice said, including the telegram cases and disposal of dead body cases and marriage contracts. And the best cases for you are the innkeeper and common carrier cases. So how close is that analogy, the analogy that you're trying to draw? It seems to me that you would need to kind of draw a pretty strong analogy to that particular category, wouldn't you? Well, yes, you could look at those analogies. Those aren't the only sets of cases in which the restatements say that they are available. When the breach is such a kind that a serious emotional disturbance is a particularly likely result, potential discrimination meets that standard. Well, let's say I have some skepticism about Restatement 2nd, and I'm looking at Corbin and a whole variety of other treatises. I think Restatement 2nd states it at a pretty high level of generality, but Restatement 2nd has moved more into law reform rather than just law description. So if you look at a full range of other treatises, I read them all to be identifying discrete categories. And I think that's kind of, in my view, where the nub of this case is. I think you're right that if we read it at a high level of generality and look at the restatement view, that if it's foreseeable, and if it's the kind of a contract where we would say it's foreseeable, then I think emotional damage is, I think you're right. I mean, discrimination and stigmatic injury flow from discrimination. If we read it at a lower level of generality and we look at more specifically, you have categories of cases in which historically emotional damages were recoverable in contract cases. And I think, you know, when you look at Gebster saying that we should take into account the implied nature of the cause of action in shaping the remedy, I think that is an argument, maybe it's not a winning one, in favor of adopting the more specific level of generality. Well, even if you look at the treatises, let's take, for example, McCormick, which is one that respondent actually cites heavily for the proposition. If you look at actually McCormick, you will find that if you look later on in McCormick, you will see that it says practically all courts will give damages for mental distress and humiliation, cases of actions for breach of contract for expulsions of guests from hotels, passengers from trains, or expulsion or refusal of admission to ticket holders in place of public resort or entertainment. I agree. That's what I was asking you. To win, do you have to draw an analogy to that particular category as opposed to relying more generally on this foreseeability and notice concept? Well, when you look at contracts that protect dignitary harms rather than pecuniary harms, you will find that these are just examples of cases in which they have been found to be available. If you look at our Aaron case, our Odom case, those were specifically cases involving discrimination. And in those cases, you will see that the court awarded emotional distress damages for purely breach of contract in those cases. Can I ask about the contract analogy? Because it does seem difficult, as Justice Barrett's identifying. And one of the ways I've thought about this case is to try to compare it to the express causes of action. So this is an implied cause of action, as Justice Barrett pointed out. The express causes of action that you highlight do allow these kinds of damages. So that's a plus for you in my evaluation of your case. But Congress has put caps on those damages in Title VII, the graduated caps. And that becomes a minus for you because are we supposed to allow uncapped liability in the implied cause of action? That seems a problem to create inconsistency with the express cause of action. Or are we supposed to put caps into the implied cause of action? That starts to seem very legislative and too legislative, probably, for the court. So how do we resolve that tension with the implied cause of action? Sure. Two things. One, in 1986, Congress ratified and said that in terms of remedies, remedies at law and at equity would be available. So this, we would say, is a little bit higher than when Congress hasn't spoken to it at all. And as to, this court has already said that compensatory damages are available. And if you look to statutes such as the Fair Housing Act or 1983, those statutes don't specifically say emotional distress damages are available. They say, the court has said that these statutes actually allow for compensatory damages. Congress hasn't specifically carved out saying either emotional distress damages are not available, like the Prison Litigation Reform Act, or if you look at Title VII, when Congress specifically spoke to the issue and says they are available but they are capped. Usually what we see in all the statutes is that if compensatory damages are available for discrimination, they are not capped and they are available for emotional distress. So... Well, not in Title VII, you said. Because Congress has specifically spoken to the issue and has limited it. But when they are actually, when Congress doesn't limit it in, say, the Fair Housing Act and the 1983 claims, they have been available uncapped. And those statutes don't specifically say emotional distress damages are available. I'm sorry, go ahead. Some of the amici point to very large recoveries. And I think that that's what Justice Kavanaugh is referring to. And so what he's concerned about is that under Title VII, there's limits for discrimination. If we recognize emotional distress damages here, there are no limits. So there would be a disparity between Title VII and discrimination here. Why should we accept that disparity? I think that that's the essence of his question. And he can always correct me. Sure. So the interesting thing about this case is that the courts almost uniformly have allowed emotional distress damages or left them undisturbed. This court four times in the past in awards of emotional distress damages have left it undisturbed. And so if this court were to look at what's been going on for the last 30 years, and what we find is that the damages have not been outrageous or very high. They have to go to other statutes like 1983 and Title VII, and most of those involve state discrimination laws in which awards were high. But we have procedures and processes to cabin high awards. And we have remitter. We have jury instructions to show to the jury that it must be supported by competent evidence. And there's a good reason why a respondent doesn't actually cite to any Title VI cases when they try to show these huge, huge awards is because for the past 30 years there haven't been any. And so the court has 30 years of evidence to show that these haven't been huge, untethered to actually the harm that was actually done. What if you have four state Supreme Courts allowing these types of damages and four state Supreme Courts disallowing them expressly? Under the Spending Clause, would that measure of damage be incorporated or not? Are you, Mr. Chief Justice, talking about the state statutes for discrimination? Well, my understanding is in seeing what the Spending Clause binds you to, you look to what contract remedies are, right? That's typically a question of state law. So what if it's four to four? Is the eligibility for those damages incorporated when you take Medicare funds, Medicaid funds, or not? Well, if it was four to four, we would say it's in our favor. But in this case, what Why is that? It seemed to me to be a tie. If it was a tie, we would look to what would logically constitute notice. Well, that's right. I mean, you know that it's four to four. And I think our precedents say under the Spending Clause, what you're buying into has to be pretty clear. Yes. And in this case, it's actually 46 states have expressly stated that or have not stated that they aren't available. And there are only four states that say emotional distress damages are not available for breach of contract cases. So we actually look Well, what did the other 46? I mean, you're just saying they haven't said anything about it. They've actually either expressly stated that they are available, or they have not affirmatively stated that they are not available. And if you look to the states that have affirmatively stated that they are available, you're looking at approximately 32 states that have already stated that they are available. So if you're looking at the majority of you, if you're looking at their statements, the treatises, even the treatises that respond at sites, for these types of contracts, these are available. Okay. What measure of emotional distress damages does your client seek in this case? We're at a 12B6 stage right now, and my client hasn't affirmatively stated how much she's seeking. But traditionally, in these types of cases, the amounts have been somewhere between $1 to the highest in this type of case that I've seen is about $25,000. So what damage did she suffer here? Can you not provide some information about what she is trying to recover? Sure. So Ms. Cummings is deaf and low vision, and if she does not have a sign language interpreter for physical therapy services, she will not be able to effectively communicate with her providers. And without that, she is essentially being excluded from those services. This was considered to be the best rehabilitation... Now I understand the nature of your claim, so you just can't tell me anything more than the numbers that you just gave me. Well, when someone is excluded from a facility or a provider that they see the best, that exclusion in itself is a harm. Okay. I understand. You're not going to provide the numbers. And I understand it's at 12B6. What invoked the spending clause here? The expressed acceptance of federal funds in the agreement here not to discriminate on the basis of sex, race, disability, et cetera. Could the respondent have lawfully refused to provide treatment on the ground that the patient was going to pay for the treatment using Medicare? And Medicare is what's involved here? Well, that is a fact-specific inquiry that we haven't got to yet. And if the respondent wants to raise that in the trial stage, it can. What is this fact? What is the fact-specific inquiry? So when... You have a claim under the Rehabilitation Act and the Affordable Care Act. Correct. And what invokes this? What is the federal spending clause basis for the claim that you are asserting? For the government's power to impose conditions on the receipt of federal funds. That's where the power comes from. And what are the federal funds? That's what I'm asking. These are Medicare and Medicaid funding. Okay. I just don't know the answer to this question. Could they have lawfully refused to treat her because she was going to pay using Medicare and Medicaid funds? That's okay. I don't know. I don't know specifically in this case. Justice Thomas, anything further? Justice Alito? Justice Sotomayor? I think the question Justice Alito was asking is, you're claiming emotional distress. What did she suffer? I think that is his question. It's as simple as that. What level of pain, what level of being upset, what's the emotional distress? Sure. He's not asking you to quantify it. He's saying, what did she suffer? Sure. Ms. Cummings suffered a profound humiliation, a feeling of less of a self-worth, that she's not as worthy as other members of the public because of her disability to access those services. And Ms. Cummings, when she was excluded, she experienced a profound humiliation and a profound sense of indignity that just made her feel like she wasn't worthy. And that is the sense of emotional distress that she experienced. I understood from the papers, if I'm misunderstanding correctly, that she received less than adequate care at the substitute place. So I'm assuming she also suffered some discomfort or pain? Yes. So she did go to the subsequent rehabilitation center and she still experienced pain and had to actually go through back surgery because the physical therapy was not successful. That is not a claim that is at issue right now at the total P6 stage. However, she did have to eventually get surgery. Thank you. Justice Kagan? Justice Gorsuch? I have one question. So when you said that the numbers hadn't been high and there hadn't been a problem, Justice Kavanaugh's point about large figures, you were referring to Rehabilitation Act cases specifically, but of course this applies to the cluster of statutes including, say, Title IX. Is the same true across the board of all of these cases that there haven't been or is it just the Rehabilitation Act data that you're looking at? It is actually amongst all the statutes, Title VI, Title IX, Rehab Act, ACA. There have not been huge awards in those family of statutes. Those awards have been cited in our amici in the disability brief and others and the court can look at those as well. Thank you. Thank you, Counsel. Ms. Sundstad? Mr. Chief Justice, and may it please the Court, this Court has repeatedly recognized that federal funding recipients may be liable for compensatory damages when they engage in intentional conduct in violation of the clear terms of the nondiscrimination statutes. Respondents therefore ask this Court to hold that while funding recipients are on notice that they must pay compensation, they are not on notice that they must compensate for some of the core harms of discrimination, humiliation, degradation, and related emotional distress. That contention is irreconcilable with contract law, 30 years of practice in the federal courts, and common sense. If Respondent were correct, then the petitioner in Franklin won only a pyrrhic victory because while this Court held that she was entitled to seek damages for the severe sexual harassment and abuse she suffered at the hands of a teacher in violation of Title IX, she was not entitled to compensation for the only injuries she described in her briefing, the profound psychological and emotional harm caused by the discrimination. That is not the law and this Court should not make it so. Did you agree that the conditions that follow from accepting federal funds are not sufficient under the spending clause have to be clear? It's not simply enough that you can argue that they're there? The Court has long held that there needs to be notice and therefore the terms need to be clear, yes. Well, along the lines of some questions I asked your friend, how clear does it have to be? I mean, if you have one case, is that clear enough? If it's a tie, is that clear enough? What's the standard? I think it needs to be the rule and I think you can look to Barnes and see what they looked at were four contract treatises, all of which said that punitive damages were off the table. Okay, so it has to be the rule, but does it have to be a rule in a particular category of cases and how big does that category have to be? I mean, we've indicated or said that it's a contract analogy. Spending clause is a contract and that's where you look. But if it's a category of cases that comes up once in a blue moon, have you signed on to that or is it only the more general contract damages? Well, I think that contractual remedies always depend on the nature of the contract because the question fundamentally with respect to remedies is what might have naturally flown from the breach of this particular contract or this particular contractual provision. What might have been in the reasonable contemplation of the parties? So you do have to look at the specific nature of the contract and then you say, well, what types of damages have been traditionally been awarded for that type of, for a breach of that type of contract? And here we know that this is a contract or by analogy this can be considered the sort of contract that is protecting other than pecuniary interests. It's preventing discrimination, which one of the core harms of discrimination is not pecuniary. And so contract law has long recognized that where the contract at stake is protecting other than pecuniary interests, the remedies that are available are also will, are damages for other than pecuniary harms. Have you seen or have you had any federal funding recipient decline to take federal funds since Franklin or even if we don't go back as far as Franklin, because as you point out, Franklin was an emotional distress case. But since at least Shealy, which is, I don't know how many years, but a lot, has anybody turned it down or questioned it? Not to our knowledge. No. And I think the history is quite powerful in that respect because I think in Barnes, one of the motivations was this fear that if punitive damages were available, people would simply reject federal funding. And we just haven't seen that even though the legal landscape has really been the availability of this kind of damages for at least 30 years. So I think that is particularly striking. What is your response to Justice Kavanaugh and Justice Sotomayor's question to your friend about the lack of caps on emotional distress damages in this context as compared to Title VII? I think Title VII is simply a different statute. It's obviously governing employment discrimination where the traditional remedy has been back pay. There's no cap on that. And then when Congress in 1991 for the first time introduced an additional compensatory and punitive remedy, then it put some caps on that. Not just, by the way, on compensation for emotional distress, but also on compensation for future pecuniary loss and a variety of other forms of damages. And I think there it was a question of capping this additional supplemental remedy to the traditional back pay. Now, in Title VI context, we're just not usually dealing with something where back pay can be a remedy. Often we're dealing with children who are being subject to discrimination within a school system. So we don't have the sort of traditional pecuniary harm. So it makes sense that the compensation there is available for emotional distress and that the compensation isn't being supplemented by these additional remedies. Could I take you back to Justice Barrett's initial question, which had to do with the level of generality that we're supposed to consider this at? And I think you said, well, what we should do is look at a category of contracts, and this is a category of primarily noncommercial contracts, and so we should ask, you know, with respect to that category, what kind of damages could a person get? I suppose you could go up a level of generality and say that the relevant rule is something like you should always get what damages are foreseeable from a contract breach. Alternatively, you could go down a level of generality and say we're really trying to look at whether there are quite analogous cases having to do with discrimination. So which level of, you know, that's three, there might be more. What level of generality, how do we pick? What should we think about this case at? As a threshold, I'd say the good news is that we win at all three levels of generality that I think you're articulating there. But I do think, the reason I said that what you need to look at is for this type of contract, what type of remedies are available, that's just a basic, very broad contract rule that the remedies that are available for a particular breach are determined by what was foreseeable, what naturally flowed, what was within the reasonable contemplation of the parties at the time of contracting. And then you apply that general rule and you can apply it to the broad category of contracts that protect against non-pecuniary interests, that protects, pardon me, non-pecuniary interests, or you can apply it even more specifically with respect to discrimination. Now there just aren't many cases with contracts involving discrimination, but we have cited examples where courts have awarded compensation for emotional distress where discrimination is involved. Again, that's a rare circumstance. And Respondent hasn't cited any cases where a court has rejected that proposition. And do you view the common carrier type cases, the innkeeper type cases, should we look at those as discrimination cases or are those somewhat different and we would have to extrapolate from them? I think those cases are directly analogous in that I think they're the most obvious example of contracts where there's a term that's about protecting essentially emotional interests. Because from the time of Justice Story's opinion in Chamberlain, we've recognized that common carriers aren't just contracting to provide a passage or to provide a roof over your head, but they're also one term, either explicit or implicit, is to treat you well. And I think that's a direct analog to non-discrimination provision because it's really guaranteeing people a certain type of treatment. So I think the analogy there is very close. You said something in response to Justice Kagan that there aren't many contracts involving discrimination, which makes me go back to what I was saying, which is why are we looking at contract law, then maybe this is fighting against the inquiry that's already established. But looking for something that doesn't exist as opposed to looking at discrimination statutes with expressed causes of action and trying to reason by analogy from those. Does that help me out with how to look at that? Sure. So the Barnes said that funding recipients are assumed to be aware of remedies traditionally available in contracts. And I think that makes sense because sort of more broadly, and I think this is the question you're getting at, we know that in spending clause legislation, the question is notice. What would a funding recipient have expected when they entered into the agreement, when they accepted the funds? And so I think we do, contract law supplies a body of law that helps us understand, well, what do people normally expect when they enter into these sorts of agreements? If they're only protecting pecuniary interests, they might expect only to pay pecuniary damages. If the contract is protecting other than pecuniary interests, they're going to expect to compensate for other than pecuniary harm. But even if you want to disregard the contract analogy, then I think, again, you have to consider notice. And that is, would federal funding recipients who are aware that they must pay compensation, would they think, oh, but I won't have to compensate for the core harms of discrimination? And I think, you know, you just have to think about, for example, Tennessee versus Lane, where we have a gentleman who, because of a lack of reasonable accommodations for disabilities, had to pull himself up two flights of stairs. Now, he was seeking damages for the humiliation and degradation that he experienced when he had to pull himself up two flights of stairs to attend his hearing. Because those were the core harms for which he sought a remedy. Suppose we look at the question through the eyes of the respondent in this case as opposed to parties in another case. And what is at issue is the application of the reasonable accommodation standard under the Rehabilitation Act or the requirement under the Affordable Care Act to provide, I think the term is something like suitable aids. Would a small physical therapist know that a condition of treating a Medicare or a Medicaid patient would be potential liability for emotional distress damages based on what happened here, which was the refusal to find, to hire a sign language interpreter to accommodate the plaintiff? Would a small physical therapist be on notice of that? I think that what you're getting at is really an antecedent question of whether compensatory damages are available at all in this type of case. And certainly this court has emphasized that there needs to be intentional conduct in violation of the clear terms of an anti-discrimination statute. It may be. The court below skips over that inquiry. So we have to assume that it's a viable claim. It's 12B6. We assume that it's a viable claim. Don't we have to assume that here? No, I think the court should address the question presented, which is whether, as a categorical matter, you can obtain compensation for emotional distress under Title VI, under Title IX, under the Rehabilitation Act. No, I understand that. But you were citing another case involving egregious discrimination, and we would have to take cases like that into account. But should we not also take into account cases like the one that is before us? That's my question. I don't think so, because I think to the extent what the court is suggesting is that the conduct here simply doesn't rise to the level of intentional conduct in violation of the discrimination statute, then that conduct won't subject funding recipients to any compensatory damages. So it doesn't need to worry about a specific category of compensatory damages. So, for example, in this case, if this court says you were wrong to say that you can just never obtain compensation for emotional distress, that no victim of discrimination in violation, no matter how egregious the discrimination is, no victim can ever obtain compensation for emotional distress, then that would go back down, and there might be questions about whether here we really had the kind of deliberate indifference, the kind of intentional conduct that's necessary to trigger a damages remedy at all. I just wanted to go back to the point about emotional distress damages and the possibility that they might go too high, because I think Respondent places a lot of stress on this. And I want to echo what my colleague emphasized, which is that we have had 30 years of these kinds of damages being available, and while Respondent and their amici attempt to cite examples of high awards with respect to emotional distress, they just aren't from this family of statutes. And you have to assume that they've been boiling the oceans looking for sort of exorbitant awards, and they're not finding them, and that's because there are checks on that kind of award. So, as I was just explaining, as a preliminary matter, you can't even get your foot in the door for compensatory damages until you show intentional conduct in violation of the clear terms of a statute. And even after you prove that kind of conduct, you then have to prove actual injury. As this court explained in Carey v. Pepys, you can't just assert emotional distress. You have to be able to put forward competent evidence of an actual injury. And courts have actually said, just saying, I was sad, I was depressed, even a conclusory statement that you were humiliated isn't going to be enough to get damages. And if a defendant believes that the damages... What does that mean exactly? What is enough? In general, there needs to be specific, detailed evidence cataloging the emotional distress. Often there will be corroboration from those who are around the person. Sometimes there will be medical evidence corroborating it. So, for example, you can't just make a conclusory statement that you were depressed. But what you might be able to say is, I did not leave my room for three months. I gained 40 pounds. My marriage broke up. I lost my relationship with my children. And then if you could put forward concrete corroboration for those things, if you could show medical evidence, then that's the kind of thing that, particularly for the larger awards, you're really going to need to see. Where do all these rules come from? Well, this court in Carey v. Pepys said that there needs to be actual injury and competent evidence, but also there just always needs to be sufficient evidence underlying a damages award. Justice Thomas, anything further? Justice Byer? Justice Alito? Justice Sotomayor? I do have one question. There's an amici here who says, you can't ever have an intentional failure to accommodate. And they tend to think that this is the Chamber of Commerce. Do you agree with that statement? Do you disagree with it? Of course, that question really isn't presented here. No, it's not before us at all. But it is subsumed by Justice Alito's question, which is the assumption that if someone can't afford it, they shouldn't be subjected to litigation. But the point is that they won't be because... Because of undue burdens and because the accommodation has to be reasonable. What you see as intentional that would make them liable is only if they could, reasonably could, and refused to do it. Not only that. Most courts of appeals apply a deliberate indifference standard. So that means you have to know that the person's federally protected rights are probably going to be invaded unless you make the accommodation. And then you have to intentionally refuse to make that accommodation. I mean, that is a pretty high standard there. But I think that that isn't the equivalent of taking it off the table entirely. Justice Kagan, anything? Justice Gorsuch? One follow-up, just so I understand the answer to the question about the disparity potential of Title VII, the express cause of action. I think you've argued a couple of things. One is that the damages are often not high in these cases, and we have years of experience. The second answer I think you said is Title VII is not the only statute. There's 1983. There's Title VIII, and those don't have the express caps. And then the third answer you gave was that Title VII has back pay. I don't understand that third one. Why that matters. Title VII, the traditional remedy, was equitable, and it was about back pay. So people were already able to obtain, after employment discrimination, often substantial awards for the back pay that they lost. And in 1986, when Congress ratified the availability of a damages action under Title VI, there were, in fact, no compensatory damages available under Title VII. So we know that Congress just thinks of these two statutes differently, and I think that part of the reason for that, part of the reason you might have compensation, but in a limited form in Title VII, is because of the existence of this other remedy that typically isn't available where, for example, you have a school child who just doesn't have pay and certainly doesn't have back pay that they might be able to obtain. Thank you. Justice Barrett? I just have one follow-up. So in the class of non-pecuniary contracts where courts have recognized the availability of emotional distress damages, they often come along with a willful or wanton caveat, available only in cases where the breach was willful or wanton. Should we make anything of that condition here? I don't think so, because I think that in many cases that isn't attached. But even if that was a requirement, I think because it does have to be intentional conduct in violation of the clear terms, it would be satisfied in all of these cases. Thank you. Thank you, counsel. Mr. Shanmugam. Thank you, Mr. Chief Justice, and may it please the Court. The Rehabilitation Act and the ACA differ from other anti-discrimination statutes in two critical respects. First, they contain no expressed causes of action,  are available to enforce their provisions. Second, they were enacted under the Spending Clause, and because Spending Clause statutes are in the nature of contracts, recipients of federal funding must have clear notice of the conditions that attach to the funding. In Barnes, this Court held that recipients have noticed that they are subject to a particular remedy, where the remedy was generally and traditionally available in an action for breach of contract. This case presents the question whether emotional distress damages were such a remedy. They were not. The general rule has long been that a plaintiff cannot recover from emotional distress in a contract action. This Court has adhered to that rule in cases governed by federal common law. And while some state courts have made an exception for certain narrow categories of cases, the scope of that exception remains unsettled to this day. Indeed, the availability of emotional distress damages in contract actions is much like the availability of punitive damages, which this Court held was insufficient in Barnes. The Court should be cautious about recognizing the availability of emotional distress damages here. As Justice Alito's question illustrated, emotional distress damages are notoriously difficult to quantify, and it would be perverse to provide emotional distress damages more broadly under spending clause statutes with implied causes of action than under anti-discrimination statutes with expressed causes of action. Title VII, of course, caps those damages. And to your point, Justice Kavanaugh, several other statutes, including Title II, do not permit those damages at all. Congress plainly does not believe that emotional distress damages are a necessary remedy for every instance of discrimination, and the Court would be undertaking a quintessentially legislative task if it provided for open-ended damages here. The judgment of the Court of Appeals should be affirmed. I welcome the Court's questions. Mr. Shanmugam, would you give us an example of the notice that would have been adequate here for you to be responded to be held liable? I think to go to the Chief Justice's question to my friend, I think that it would have to be the prevailing rule that emotional distress damages are available in contract actions, and I think this Court's decision in Barnes provides a guide. There, of course, the Court was considering the availability of punitive damages, and as my friend pointed out, the Court looked to the restatement in various treatises. What the Court looked to was the general rule. If you take a look at the restatement provision at issue, and that's Section 355 rather than Section 353, it's very similar in that it articulates a general rule, punitive damages are not recoverable for a breach of contract, and then an exception, the exception being unless the conduct constituting the breach is also a tort for which punitive damages are recoverable. And under the common law, many courts recognize that where you have wanton or malicious conduct, you can get punitive damages in a breach of contract action. But the Court didn't drill down into that exception and determine whether that was analogous, whether, for instance, as has just been discussed, intentional discrimination can be characterized as a form of wanton or malicious conduct. The Court simply looked to the general rule and said that in light of that general rule, a recipient of funding would not have clear notice. I guess I don't understand that answer, Mr. Shanmugam, and indulge me for a minute with a hypothetical, and you'll say, well, that differs from this case, but let's just assume the following. Let's say that the restatement and all the treatises and all the cases are in accord, that in general, of course, you don't get emotional distress damages for breaches of contract, but that in a particular kind of contract or contract provision, which is not meant to protect pecuniary interests, but is meant to protect other sorts of interests like dignitary interests, in that category of cases, so say the restatement, the treatises, and all the cases, in that category of cases, you do get emotional distress damages. Now, that's an exception. I mean, call it an exception, but it's completely settled. At that point, you have to lose, don't you? I don't think so necessarily. I will get the necessary caveat that that's not the state of the law out of the way, but I want to address that directly, and I think, again, that Barnes actually illustrates that. I think, if anything, in Barnes, the quote-unquote exception was a sort of general rule in the sense that it didn't apply to certain enumerated categories of cases. It applied whenever you had wanton, intentional, malicious conduct, and yet the court didn't look to that exception in determining whether or not a party was on fair notice. Now, I really do think that this case differs from a situation in which you have a rule that whenever emotional distress is likely to result, emotional distress damages are available, and I think that to the extent that the restatement used that formulation, I don't think that it was stating a catch-all rule or legal standard. But I think even if there were such a rule, I'm not sure that Barnes would extend so far as to say, well, as long as you can articulate some category of cases in which a type of damage is available, a party is on fair notice. We think this is an easier case. My law clerk has looked up a lot of these things, and he's usually right. She's found about, I don't know, five treases going back to 1883 and 32 cases, you just heard him say, and a lot of other stuff, and they all seem to say, well, there is an exception where the object of the contract is such that that's likely to be the harm. So what do you say? When I looked at all that, I thought, well, maybe she might have missed a thing or two, whatever it is out of your brief, and the overwhelming authority seems to support them, doesn't it? I don't think there's any real disagreement about the state of the law. I think where there is disagreement is about the accurate characterization of the law, so let me speak directly to that, Justice Breyer. There certainly are some jurisdictions in which there are certain specific categories of exceptions, common carriers, innkeepers, cases involving death messages sent by telegram and the like. Typically what's been going on in those cases is that courts have looked to tort law and have imposed a heightened and extra contractual duty alongside the contractual duty in light of the personal interests that are implicated by the particular context, by the relationships at issue. Now, again, I think if you look at the treatises, the state of the law to this day is unsettled, and there have been jurisdictions that have kind of moved back and forth. There are jurisdictions that have refused to extend those exceptions to various categories of cases in which one might say that emotional distress is similarly reasonably likely, and, of course, there are jurisdictions that do not permit emotional distress damages at all, and, again, we cite the Southern Express decision from this court for the proposition that in those areas of the law where federal common law applies, obviously more limited these days, emotional distress damages are categorically unavailable. Oh, well, that's what I was going to go to, the innkeeper. I think that's very bad for you. The same question. I mean, you know, no, you can't stay in the room. You have to sleep outside. There you are, outside, and that's uncomfortable, but also all the little kids come around and say, ha, ha, ha, he's sleeping outside tonight, ha, ha, ha, just as they might say something even worse where the person who can't, you know, can't walk upstairs, there's no elevator, and so this handicapped person is trying to, you know, climb up the stairs, and that's a bore and painful, and also a lot of people might think this is a little, you know, sort of make fun of the person. Yeah, and to follow up on Justice Breyer's point, I mean, I read those exceptions as fairly well settled across the treatises, the innkeeper and common carrier, and I think those are the hardest cases for you. I think there are some jurisdictions that have not permitted emotional distress damages, even in those cases, and to go to Mr. Rozinski's point, you know, he lumps in all of the jurisdictions that have not expressly rejected emotional distress damages on his side of the line, but in many of those jurisdictions, they simply haven't spoken to the issue at all, but I don't want to overly fight those cases because I would certainly recognize that that's an example that the treatises often cite as kind of a paradigmatic exceptional example, a situation in which where parties are expelled or not permitted to stay at an inn, courts looking to tort law have found a heightened duty and have said that the breach of that duty can give rise to emotional distress. Isn't that what intentional discrimination is? I find it interesting that the two states in Barnes that permitted punitive damages prohibited emotional damages. So it seems to me that if I look at your small universe of states that prohibit emotional damages, those two made it up by permitting punitive damages, but putting that aside, I think the most important point is the nature of the contract here is an agreement by your client to treat people with disabilities equally to others and to provide accommodations and let them enjoy the benefit of their services if it's reasonable to do so. That's no different than the common carrier agreement to treat a passenger with dignity and to treat them with a sense of respect, the special care, so it's in the same nature and both of them are intentional in the sense of what an intentional tort speaks about. So I'm not sure how you distinguish either those cases or you distinguish the fact that it is an intentional act and an intentional breach of a clear contract with the government and with the patient. Sure, so Justice Sotomayor, let me make two general points and then a specific point about where you started, which is the relationship with punitive damages. My general points are first that the whole point of the contract law analogy is clear notice to contracting parties and I think that once this court starts to engage in an analysis about whether or not a recipient of federal funding is more like an innkeeper or more like a hospital that negligently permits someone to take a baby. So what do you do with Franklin or what do you do with Sheely for 14 years? What do you do with the multiple of state and federal cases in decades that have awarded damages for this kind of discrimination? So I think that there are sort of two separate questions here. The first is what is the state of contract law? And I would note parenthetically that I think we should be looking at the state of contract law in 1964, two decades before the formulation and the second restatement on which the other side relies, because the inquiry should really focus on the state of law at the time of Title VI, whose remedies are of course incorporated into these statutes. The second and separate argument is kind of this ratification light argument that is made by the other side and that my friend Ms. Sinsdack made very heavily during her argument today, which is this argument that because there were cases that seemed to assume the existence of emotional distress damages, that Congress, at least by the time of the EACA, should somehow be understood to have ratified those cases. Now of course that's not how ratification works more generally. Ordinarily you look to the cases that have actually addressed the question presented. And I think even by the time of the EACA, there was only one court of appeals, Sheely, which had addressed the question. There were district courts going both ways, as petitioner herself acknowledges in the cert petition and as the district court set out in its opinion. So I certainly don't think that the law on the specific question of whether these spending clause statutes might permit emotional distress damages was settled. I do think that the spending clause context here is centrally important, really for the reason that this court set out in Gebser. In Gebser, the court drew a distinction between, I believe, Title VII and Title IX. And the court said, well, outside the spending clause context, anti-discrimination statutes are often centrally about providing compensation. By contrast, spending clause statutes are really about providing equal access and ensuring that parties that receive federal funds provide equal access to federal programs. And I think that that is really the reasoning that underlay this court's decision in Barnes and its reliance on the contract law analogy. And to pick up on the first part of your question, Justice Sotomayor, and the question of the relationship between emotional distress damages and punitive damages, I think if you look at the case law, the case law is actually quite similar in that courts in breach of contract cases have made both emotional distress and punitive damages available only in exceptional and, frankly, in overlapping circumstances. And indeed, if you take a look at the Corbin Treatise, the Corbin Treatise says in its discussion of this very issue that the line between emotional distress damages and punitive damages is, quote, indistinct and hard to draw, end quote. And indeed, I think if you look to jurisdictions that permit punitive damages and not emotional distress damages, those courts are essentially using punitive damages as a proxy for emotional distress damages. And conversely, some of the courts that have permitted emotional distress damages have noted that they have a punitive and deterrent effect. I say all of that simply to make the point that emotional distress damages are, in some respects, not like other forms of compensatory damages. They are, in some respects, more similar to punitive damages, particularly where breach of contract cases are concerned. A couple of questions on that then. First, if we're in the contract world, is the right question to ask, is this kind of situation more like the general contract or more like the contracts in the, quote, unquote, narrow exception? Is that the right question to ask? I think that the right question to ask is, what is the prevailing rule in breach of contract cases more generally? Well, that gets to Justice Kagan's question. You've got to figure out what category you're in. Calling it narrow doesn't do much for me. You've got to figure out which is the better analogy, I think, the general rule or the exception. And Justice Barrett's questions, I think, elucidate why the exception seems pretty on point here. Well, I would say that to the extent that the court wants to sort of try to identify some category of cases, again, I would fall back on the point that the rule was simply not settled, particularly as of 1964. And again, the law, frankly, varies even from one of the enumerated exceptions to the other. In some of those exceptions, just to finish my sentence, courts have required wanton or malicious conduct in other contexts that courts haven't. And so I think it's very hard to derive from this any sort of prevailing rule that would be sufficient to give clarinetists. Yeah, I mean, we're a country with a lot of jurisdictions. The right test cannot be does everybody agree, you know, across the board, and everybody has considered the exact same question and answered it in the exact same way. If you look at the state of the law generally at the appropriate time, on the one hand, you have these what seem, as Justice Kavanaugh just suggested, the most analogous cases, which are the common carrier slash innkeeper cases where there was a refusal or a denial of adequate service. So those cases seem to be pretty much all cutting against you. And then you have like, well, what do I really do when I'm trying to think what my legal obligations are? I go to the restatements. I go to the treatises. And you have a whole bunch of restatements and treatises, starting with the restatement, which maybe the second restatement is a little bit, you know, recommending as opposed to describing. But with a bunch of treatises, including by most of the major contract treatise authors, you know, Williston, Farnsworth, all of them saying that in this category of cases where the contract provision protects other than pecuniary interests and where you can foresee that there will be other than pecuniary harms flowing from a breach, that those contracts are treated differently with respect to damages. So I guess it's just like if you look at the treatises, you look at the most analogous set of cases, they cut against you both. Yeah, so a few points in response to that, Justice Kagan. And I'm going to leave aside the point that I've already made, that that was just not the approach that the court took in Barnes. We are certainly not here advocating for some sort of Eighth Amendment-like state-counting rule here. We do think that the rule, at whatever level of generality, has to be the prevailing rule. So I don't think it would be sufficient if you had four state Supreme Courts going one way and four state Supreme Courts going the other. But I do want to speak specifically to this question of the appropriate sort of level of generality. I do think that when you take a look at the case law, there are certain categories of cases. We've talked about the innkeepers, common carriers, death messages, and the like, where courts have tended to find that emotional distress damages are available. Now, I want to emphasize one point that I alluded to earlier, which is that those courts tend to be looking to tort law. And I think that for purposes of this analysis, I think it would be a little bit odd, and I think that the Solicitor General in her brief recognizes this, to say that when you're looking at the remedies that are available traditionally for breach of contract, the remedies that are drawn from the tort context are somehow fair game. And, of course, nowadays we have the distinct tort of intentional infliction of emotional distress, which will be available under state law in many of these cases. But I do think that if you look at the restatement, if you look at the treatises in particular, I do think that those authorities, with all due respect, Justice Kagan, indicate that the law in this area is unsettled. Even this court in its Southern Express opinion, which certainly did predate 1964, recognized that in the context of telegrams, courts have gone in both directions. And I would give you just one example, which is Corbin on contracts. And Corbin says that the general rule is well established, but that by contrast, the class of cases involving emotional distress damages, quote, has resulted in much litigation, and the law cannot be said to be entirely settled, end quote. And Corbin also notes, you know, first the- Well, I think when it said that, the question was exactly what fell within the category. But if you had said, is it settled that, you know, denial of adequate service by innkeepers is settled, the treatises clearly give you an answer to that. Yes, it is. Well, there are more states that might have permitted that. At least certainly today, there are more states that permit emotional distress damages in certain exceptional circumstances. But again, these cases are looking to tort law. The legal standard for when emotional distress damages are available is itself open to question. In many of these contexts, particularly because courts are looking to tort law, they're requiring wanton or malicious conduct. And again, at that point, this starts to uncomfortably overlap with punitive damages, where again, courts have said that emotional distress damages are available in breach of contract actions where there is wanton or malicious conduct. And yet, that did not stop the court from saying, we're just going to look to the general rule, as the court did in Barnes, and that general rule does not permit for punitive damages. And again, if this is all about notice, I think it would be very unfair to say that recipients of federal funding, many of whom are like my client, a relatively unsophisticated solo practitioner of physical therapy, to have sort of this encyclopedic knowledge of the law to realize that if they accept Medicare and Medicaid funds, they are going to be subject to emotional distress damages because of an analogy to cases involving innkeepers. But Mr. Shanmugam, let me press on this notice point. I find it very surprising that this case is here so many years, I mean, you know, 40-plus years into recognizing the causes of action under this family of statutes. So it seems to me either nobody was seeking emotional distress damages and then suddenly people started doing it and it came up, or, you know, as petitioners told the story, that everybody assumed that they were available, and then when Sheely came around, somebody finally thought to challenge it. So why is it that this just came up in the 11th Circuit case before and then, you know, now in this case before us? Everybody seemed to be on notice. These cases were being decided and damages being awarded. No one complained. Justice Barrett, for whatever reason, comparatively few of these cases seem to reach the court of appeals level, but this issue was being litigated and being litigated even before this court's decision in Barnes. The earliest district court decision going our way is a decision, I believe, from 1993, and even before the 11th Circuit's decision in Sheely, there were other district courts that had agreed with our view. Now, not surprisingly, once a federal court of appeals went the other way, a number of district courts then followed suit and went in that direction. But I don't think that it is true that it has just been assumed for 40 years, 40-plus years, since the enactment of Title VI, that emotional distress damages are available. Indeed, of the four cases that came to this court involving allegedly emotional distress damages, three of those cases were cases involving pain and suffering, and as we point out in our brief, the analysis for pain and suffering damages might be somewhat different because there's a somewhat more substantial basis of contract law permitting those damages. And so, again, I don't think that the law on the federal level was settled, and again, I think that the law as a matter of contract law was certainly not settled, and the best evidence of that is that I think all of the treatises, while certainly recognizing that some state courts have recognized exceptions, have emphasized the unsettled nature of that exception. What's the one that would apply here? A hypothetical. A deaf woman who has a very hard time seeing hires under contract a rehabilitation expert who promises to give the best treatment, and then when they go in to talk, the expert, she says, I need a sign language interpreter, and the expert says, nope, not giving you one. Well, what are we going to do? And she says, well, I'll give you hand signals. I don't understand them. I'll write notes. I have a very hard time reading. Okay? Too bad. Now, breach of a contract. Known. And this woman's had a terrible time. She has headaches when she has to try to do this. She runs around in the street and just says, oh, God, it's really hopeless. I'm bad enough off, et cetera, et cetera. Okay. What was the exception that didn't get emotionally-based damages for that? So I think in your hypothetical, she might potentially have a discrete form of damages if, for instance, as a result of her failure to obtain services, she suffered some tangible injury, and there was a colloquy earlier. What she did is just miserable for her. She sits there for two hours, and she's feeling God-awful, and her cousin and her parents are there, and so is her children, and they all think, oh, my God. And she knows that's what they're thinking. So I'm not aware of any case, Justice Breyer, involving... Neither, but I have a... I got that from somewhere. Right. Well, I'm not aware of any case in which a court at common law would award truly emotional... No, no, I asked you which is the category. You were talking about categories and subcategories, and you said some, they might allow it, like an innkeeper, and then there are others that wouldn't. Okay, so I gave you a case, and I said, I would like to know what subcategory wouldn't have given damages for that. There may be some. It's not a facetious question. No, and I think that that's a very hard question that points up the difficulty of trying to identify a subset of cases that is especially analogous. Now, to sort of go back to where Justice Kagan, I think, was questioning my colleagues, I suppose that you could try to go even more specific and to identify breach-of-contract cases involving discrimination. I think the problem with that is that in the private context, no one has identified a case involving a contractual obligation not to discriminate. The most that my friends on the other side have done is to identify two cases in which the fact pattern itself appears to have involved intentional discrimination. Those were both cases that I think pretty comfortably fall within the specific categories of cases in which the underlying contractual obligations were of a sort to give rise to emotional distress damages. But I think everyone is in agreement that there just is not case law involving actual contractual duties not to discriminate that could be specifically analogous. So that raises the question, what do we use to figure out the appropriate contract analogy? The question earlier, the general rule, as you describe it, are these in-keeper cases. In figuring that out, should we look to the federal statutes, which 1983, Title VII, and Title VIII, let's just pick those three. As I understand it, emotional distress damages are available in all three of those, admittedly, with caps in Title VII. But why isn't that, tiebreaker's the wrong word, but something to look at in figuring out how Congress would have designed this statute given that we're in this implied cause-of-action box? Justice Kavanaugh, I think in many ways that's an easier way to think about this because, of course, this is a question of statutory interpretation. And we're not here to question the implied right of action. We sort of are right now. Well, no, I don't think so. Because if you accept it, if you accept it that it's a real cause of action, then why not have it be like the other analogous causes of action which pretty consistently allow emotional distress damages? Sorry to interrupt. No, not at all, Justice Kavanaugh. And I think I would fall back on what Justice Scalia said in his concurrence in Franklin, which is that it simply doesn't follow from the existence of an implied cause of action that any and all remedies are available. And I do think it is useful to look to the other anti-discrimination statutes outside the spending clause context as a guide. My point, as I indicated in the opening, is that there is no uniform practice on Congress's part. And I think that the statutes fall into three categories. First, there are statutes, and I think the best examples are Section 1983 and the Fair Housing Act, where emotional distress damages are permitted. Those are statutes with pretty broad language. The Fair Housing Act, for instance, provides for actual damages, and courts have construed that to include emotional distress damages. The second category are the anti-discrimination statutes that don't permit emotional distress damages at all. And that category includes some pretty important statutes. I would be hard-pressed to identify a more important one than Title II of the Civil Rights Act, which is, of course, the foundational provision that prohibits discrimination by private actors and the provision of public accommodation. No emotional distress damages under that statute. The same is true with regard to Title III of the ADA, the ADEA, and other statutes. Now, Title VII is, I think, perhaps the most significant example because, of course, Title VII, when it was first enacted, did not provide for compensatory damages at all. And when Congress amended it in the Civil Rights Act of 1991, Congress did so very carefully. It imposed caps, including some quite strict caps, particularly with regard to small employers, on the availability not just of emotional distress damages but also punitive damages and other forms of non-economic damages more generally. And so I think that that points up the quintessentially legislative nature of the undertaking here and the reason for the Court to be cautious. I think that this case would have a very different complexion to it if Congress invariably provided emotional distress damages because I think that that would reflect a congressional judgment that that is a necessary remedy for any form of discrimination. And, of course, if the Court were to agree with us here, there would still be a full panoply of available remedies. In many of these cases, particularly the cases involving the most intentional and blatant affirmative acts of exclusion, the kinds of discrimination that are pointed out in the amicus briefs on the other side, there will be compensatory damages in the form of economic harm. And if you actually look at many of the worst examples cited by the other side, you will find that that is, in fact, the case. You have individuals who were unable to obtain their degrees, individuals who had to get counseling and other... But we've long recognized, Mr. Shamagam, that discriminatory harms are often stigmatic in nature, that they can be very deep and very wounding even if there is no economic harm of the kind that you're talking about. And yet Congress has made the judgment under these foundational statutes that I just referred to that emotional distress damages are not available. And I do think that in the cases involving intentional, blatant misconduct, there will be not only other forms of economic and other compensatory damages available, but, of course, there will be injunctive relief, declaratory relief, nominal damages, and remedies under state law. I would note parenthetically that if you take a look at many state statutes, they do have caps on emotional distress. Why isn't the right way to deal with this? Justice Kavanaugh said, well, Title VII has caps. We couldn't really impose caps. But in some ways, the courts can impose caps. In some ways, the courts can make sure through the rules that they convey as to what kind of damages these are and the importance of keeping them in check that they should be, you know, the petitioner said up to $25,000. We don't have to set a number in order to convey a sense that these should be kept in control. And why isn't that the right way to balance the competing interests here? So a couple of points in response to that, Justice Kagan. The first is that as Petitioner herself contends, emotional distress damages can and often are awarded based on the plaintiff's testimony alone. The amicus briefs cite examples of quite significant emotional distress damages awards. To be sure, that's often outside the specific context of the Rehabilitation Act, which involves cases typically concerning a failure to accommodate, which I think do tend to be cases that don't involve, you know, as blatant of discrimination as cases involving exclusion, the paradigmatic sorts of cases that we think about. But nonetheless, there are plenty of examples of emotional distress damages running into the seven figures. And while those awards can be remitted, the standard for remitted-er, consistent with the Seventh Amendment, is quite a high one. It is that the award shocks the conscience. And so, yes, of course, if this court were to permit these sorts of damages, the court could say to lower courts in an admonishing way, look to Title VII. That might provide some guidance. But that just points up the quintessentially legislative nature of this whole undertaking, particularly given that in Title VII, what triggers the various caps is the size of the employer. That's obviously not a consideration that would comfortably fall within the traditional judicial task of remitted-er. And yet it reflects the fact that Congress made the judgment that it wanted to provide a greater degree of protection to small employers. And again, that just illustrates that if, in fact, emotional distress damages are to be made available here, that is a matter for Congress to address in the first instance. And I think the court can have some degree of comfort that if the court were not to permit emotional distress damages here, it would not be going further than Congress has in other statutes. Quite to the contrary, what the court would be doing is very similar to what Congress has done in other bedrock anti-discrimination statutes. Thank you. Justice Thomas, anything further? This is on the board. Justice Gorsuch, anything further? Thank you, Counsel. Thank you. Rebuttal, Mr. Rosinsky? So, going to the Justice Barrett's comment regarding this notice, and essentially, if lawyers are smart, if their clients had not made the decision that they were going to believe that they were on notice for emotional distress damages, virtually all these complaints involving intentional discrimination are asking for emotional distress damages, they would surely object. But for almost virtually all cases, they haven't. And that's because they are on notice for these damages. And take for this instance, for this case, respondent didn't even move to dismiss that they lacked notice of emotional distress damages. The trial court itself raised Suspante on its own accord and said, emotional distress damages are categorically unavailable under these statutes. So, given that this was the state of the law for over 30 years, and respondent may say that there has been some disagreement, but if you actually look at the cases, there perhaps are three cases that have said that they're not available. And there are, in our moving brief, we've cited at least 20 cases, including several court of appeals that have left it undisturbed or say that they are available. And this lack of notice argument, we believe, is just not correct in this context. And citing to McCormick, which was in 1935, McCormick says virtually all courts agree that there is emotional distress in the common carrier type cases that we were talking about here today. So, if respondent tries to parse out that there was no notice as to the state of 1964, that simply is just not true. And punitive damages, when they were excluded in Barnes, actually there was no affirmed case of punitive damages ever at that time under these family of statutes. And here we would be overturning a whole body of case law to the only remedy that would be available in discrimination cases. And punitive damages are traditionally only available when there is a tort involved as well. However, in emotional distress damages, there is no need to be accompanied by a tort. So, the suggestion that a separate tort is required is not supported by the treatises and the restatement. Thank you, counsel. The case is submitted.